**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT HANSON,
Plaintiff-Appellant,

v.

PUTNAM COUNTY COMMISSION, a
statutory corporation; ROGER
WILLIAMS, in his capacity as
Assistant Prosecutor of the Putnam

County Commission; PUTNAM
COUNTY SHERIFF'S DEPARTMENT, by
and through the County
Commission; WILLIAM GILLISPIE, in
his capacity as Deputy Sheriff in
and for Putnam County Sheriff's
Department,
Defendants-Appellees.

No. 95-2407

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CA-94-525-2)

Submitted: July 30, 1996

Decided: October 31, 1996

Before HALL, NIEMEYER, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Deborah E. Reed, Charleston, West Virginia, for Appellant. W. Randolph Fife, Jace H. Goins, STEPTOE & JOHNSON, Charleston, West Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Robert Hanson appeals the district court's order granting summary judgment in favor of the Defendants in this action for an alleged violation of Hanson's civil rights and pendent state law claims. The controversy arises out of the sheriff's sale of two caches of personal property seized pursuant to separate writs of possession. A West Virginia magistrate clerk issued the writs after Hanson's creditors obtained three default judgments against him in their attempt to collect money Hanson owed them. Hanson twice denied ownership of the seized property, claiming first that it belonged to a local television station and then that the property belonged to his son, Matthew.

After Hanson produced documentary evidence of the transfer of his property to his son, Defendant Roger Williams contacted Hanson's ex-wife to verify the validity of the document. The instrument also named the ex-wife "controller" of the property, considering the son's minority. In a brief letter, the ex-wife expressed her desire not to be associated with the property. She requested that if the document transferring the property was to be honored, the property should be sold in satisfaction of Hanson's debts with any remainder to be held in trust for the son. On this instruction, the sale was held and the proceeds went to satisfy Hanson's default judgments.

Hanson brought this action in state court against the Putnam County Commission, Williams, the Putnam County Sheriff's Depart-

2

ment, and Deputy William Gillispie alleging that his civil rights had been violated by the Defendants. The Defendants eventually removed the case to the federal district court. In his second amended complaint, Hanson claimed that the Defendants had violated his Fourth and Fourteenth Amendment rights, in addition to violating state law, by failing to recognize his affidavit of exemption. Hanson also claimed that Williams had violated his prosecutorial duties and had engendered a conflict of interest by contacting Davis. Finally, Hanson claimed that he had been "libeled, slandered, and defamed."

The Defendants filed a motion for summary judgment supported primarily by deposition testimony. Hanson responded with a relatively brief reply that was unsupported by additional evidence. The district court concluded that Hanson lacked standing to pursue this civil action and granted the Defendants' motion for summary judgment. Notwithstanding the determination regarding Hanson's lack of standing, the court also considered the merits of each claim.

As a threshold matter, we conclude that the district court did not err in holding that Hanson lacked standing to challenge the legality of the seizure of the property. An individual cannot challenge the constitutional propriety of the seizure of an object which he or she has abandoned. Abel v. United States, 362 U.S. 217, 241 (1960); see also United States v. Flowers, 912 F.2d 707, 711 (4th Cir. 1990) (explaining no rights violated by officer's search of bag where defendant expressly denied ownership), cert. denied, 501 U.S. 1253 (1991); United States v. Jackson, 544 F.2d 407, 409 (9th Cir. 1976) (noting voluntary abandonment deprives individual of standing to challenge subsequent search and seizure). Hanson did not submit any evidence tending to show that he ever effectively asserted ownership of the property. He therefore failed to create a genuine issue of material fact regarding the Defendants' evidence that he repeatedly attempted to prove that he did not own the property seized from his rental units.

On appeal, Hanson contends that summary judgment was improper because the ownership of the property and the legal effect of Davis's letter remained in controversy. As both issues are entirely questions of law, they were ripe for resolution on summary judgment. Hanson has presented us with no persuasive argument suggesting the district court erred in its legal conclusions. Hanson now claims that he, as his

3

son's custodial parent, should have control over his son's property. Hanson cites no authority for this proposition either, and to the extent that Hanson is now attempting to assert his son's rights in this action, Matthew is not, and has never been a party to this action.

Even should Hanson somehow establish standing in this case, it is clear that the individual Defendants are entitled to qualified immunity. The basic principles of qualified immunity are well settled. The qualified immunity defense under § 1983 limits the deleterious effects that the risks of civil liability would otherwise have on the operations of government. See Anderson v. Creighton, 483 U.S. 635, 638 (1987); Swanson v. Powers, 937 F.2d 965, 967 (4th Cir. 1991), cert. denied, 502 U.S. 1031 (1992). Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

That principle in mind, the linchpin of qualified immunity is objective reasonableness. Anderson, 483 U.S. at 639; Rowland v. Perry, 41 F.3d 167, 172-73 (4th Cir. 1994); Mitchell v. Rice, 954 F.2d 187, 190 (4th Cir.), cert. denied, 506 U.S. 905 (1992). In this case, the district court simply did not err in concluding that the individual Defendants acted in an objectively reasonable manner. The seizures and sale were pursuant to writs issued by the clerk magistrate. Hanson does not challenge the validity of the writs. See Turner v. Dammon, 848 F.2d 440, 447 (4th Cir. 1988) (extending qualified immunity to officer who merely executed valid search warrant). At each juncture in the process, the Defendants investigated the veracity of Hanson's denial of ownership of the property that had been seized. The fact that the Defendants relied on a document provided by Hanson to determine the ownership of the property and how to dispose of it was not an unreasonable course of action. Hanson has no "clearly established constitutional right" to have the Defendants ignore his protestations and proof that he did not own the property.

Hanson also claims that his constitutional rights were somehow violated when Williams contacted Davis regarding the validity of the letter that purported to convey the property to Matthew. Hanson claims, without any evidence to support the assertion, that Williams or Gillispie or both of them informed Davis that there were drugs and

4

drug paraphernalia among the seized items. Hanson further speculates that the "unethical use of an allegation . . . influence[d] Annette Davis to disavow all ownership and property rights of son Matthew." (Appellant's Br. at 14). Other than the fact that Davis indicated that she, as controller of the agreement, did not want her son to take possession of the property, there is no evidence that Hanson's speculation regarding the exchange between Williams and Davis is true. Even if it were, notwithstanding his previous representation of Davis, it is impossible to say how Williams acted unreasonably in informing Davis that there was drug paraphernalia with the property Hanson claimed belonged to her son. Hanson claims for the first time on appeal that because there was never a criminal prosecution, that Gillispie and Williams knew or should have known that the items were not actually drug paraphernalia. There is no evidence in the record that would support that allegation. To draw that conclusion from the mere fact that there was no criminal prosecution is speculation of the highest order.

Hanson also asserts that Williams had a conflict of interest that violated Hanson's constitutional rights. The claim is fanciful and unsupported by any legal analysis. It is unclear how exactly Williams's prior representation of Davis in a family law matter--the nature of which is not evident in the record--would create a conflict of interest with regard to Williams's inquiring as to the validity of the letter. Hanson alleges that Williams advised Davis to write the letter renouncing the claim to the property and even drafted it for her. But, like most of Hanson's accusations, it is not supported by a scintilla of evidence of record. Further, even if there were any evidence of this exchange, Hanson has identified no "clearly established constitutional right" Williams would have violated by his contact with Davis.

On appeal, Hanson suggests that Williams violated his "right to privacy" by telling Davis "and others" of an "allegedly upcoming criminal case." While Hanson made this claim in his initial complaint, the response to the motion for summary judgment does not expound on the allegation and Hanson provided no evidence that would suggest that any of the Defendants told any third party that Hanson was the subject of a criminal investigation. With scant evidence in the record, it is difficult to conclude that the district court erred in concluding that

5

the Defendants were entitled to qualified immunity with regard to these claims as well.*

As local governmental bodies, the Putnam County Commission and Sheriff's Department are not entitled to immunity. Monell v. Department of Social Servs., 436 U.S. 658, 690 (1978). Nonetheless, Hanson is not entitled to recover for the alleged constitutional violation from the County entities. The municipality is only responsible for a violation when the execution of the governmental body's policy or custom inflicts injury. Monell, 436 U.S. at 694; Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987), cert. denied, 484 U.S. 1027 (1988). Any theory of municipal liability must be carefully controlled at three critical points: (1) identifying the specific policy or custom, (2) fairly attributing policy and fault for its creation to the municipality, and (3) finding the necessary affirmative link between the identified practice and the specific violation. Spell , 824 F.2d at 1389. Hanson's attempt to establish liability on the part of the County Commission and the Sheriff's Department fails at the first hurdle. At no point during the litigation did Hanson identify any policy or custom, on the part of the County or the Sheriff's Department, that led to the alleged violation of his constitutional rights. The district court did not err in granting summary judgment in favor of these two Defendants with regard to the constitutional claims.

Neither is there any merit to Hanson's state law claims. Even assuming for the moment that Hanson owned the property in question, the Defendants did not violate Hanson's right to an exemption under W. Va. Code § 38-8-1 (1985). Hanson did not complete a sufficient affidavit of exemption with regard to the property seized initially, see W. Va. Code § 38-8-3 (1985), and failed to file any affidavit of exemption with regard to the items seized pursuant to the second writ. Further, there is no support for Hanson's claim that West Virginia law provides for a private cause of action for damages for

_____

*Hanson argues on appeal that summary judgment was inappropriate on the issue of qualified immunity because the reasonableness of the Defendants's actions should have been submitted to a jury. (Appellant's Br. at 16). This argument misstates the law and would necessitate a trial in every case where the defendant attempts to rely on qualified immunity.

6

Williams's alleged conflict of interest. <u>See State ex rel. Bailey v. Facemire</u>, 413 S.E.2d 183 (W. Va. 1991) (providing an action in mandamus to force prosecutor to abandon private client, but not providing for damages). Finally, Hanson simply failed to create a genuine issue of material fact regarding his state law defamation claim. In response to the Defendants's motion for summary judgment, Hanson failed to provide sufficient evidence of the existence of the allegedly defamatory statements. <u>See</u> Fed. R. Civ. P. 56(e). The district court did not err in granting summary judgment in favor of the Defendants.

For the foregoing reasons, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and would not aid the decisional process.

<u>AFFIRMED</u>

7